Mr. Espenbach, happy to hear from you. Good morning. May it please the Court. Jackson Erpenbach for Petitioner Md Fareed Uddin. This case presents the pure legal question whether the elements of Mr. Uddin's New Jersey statute of conviction exceed the federal definition of a crime of child abuse in 1996. Over the last three decades, New Jersey has chosen to dramatically expand the scope of the statute at issue. As a consequence, at the time of conviction, the statute exceeded the federal definition of a crime of child abuse in three independent respects. First, the statute can be violated with private and consensual conduct that does not harm or risk harm to a child. For example, two 17-year-olds in a lawful sexual relationship would violate the statute if they exchanged nude photos of each other and threw them onto their smartphone. Or a defendant could digitally manipulate an innocuous photo without anyone ever knowing. Second, in 2013, the statute was amended to cover 17-year-olds, which exceeds the contemporaneous definition of a crime of child abuse in 1996. And third, the New Jersey Supreme Court has held that the statute of conviction criminalizes First Amendment-protected activity that exceeds the generic federal definition. If any one of these reasons is correct, then the petition for review should be granted. Can I just make sure I understand your second argument? And specifically, my question is how I reconcile it with some very sweeping language in two published opinions of this Court. Is your argument that Esquivel-Quintana — I guess what I read those two decisions to say pretty emphatically is that the holding of Esquivel-Quintana is limited to the specific types of statutes before the Court. So is your argument based on Esquivel-Quintana, or is it based on a sort of more general argument? I just want to make sure I understand the distinction. Yes. And I read this Court's recent decisions in Shea the same way, that in our opening brief, we raised two lines of attack. First is that Esquivel-Quintana applies here. It means that a 17-year-old falls outside the generic federal definition. Which is a very hard position to maintain in light of our two published decisions saying it does not. I completely agree. And so our second issue, and I think the issue still before this Court, is put Esquivel-Quintana to the side as a matter of first principles, applying basic principles of statutory interpretation. What does the term crime of child abuse mean? We think following the same steps this Court has used, for example, in Cruz v. Garland, you start with the contemporaneous definition in legal dictionaries, we look at the same additions this Court already has, and also look at how states defined the term back in 1996. We think using those same principles of statutory interpretation that this Court has used, you reach the result that 17-year-olds were excluded as Congress would have understood the term in 1996. So we completely understand Shea, if anything, helped to streamline this case significantly. On that particular issue, although I'll note, if you believe that Shea completely resolved that second issue, it doesn't affect either a first or a third reasons why there's not a categorical match here, either that it could be committed without harm or risk or harm to a child, and our argument based upon the First Amendment. I'd like to turn to our first reason why there's not a categorical match here, which is that the statute criminalizes conduct that does not harm or risk harm to a child. This offense is different than the types of statutes this Court considered in Cruz and  Harm as an element of defense is not required for conviction, and in our briefs we provide examples that illustrate that mismatch between the statute of conviction and the federal definition of a crime of child abuse. The first example we have is two 17-year-olds who under a New Jersey law and under the law of almost every state. So the government says the two 17-year-old typo isn't exhausted. Would it matter if it was a 17-year-old and an 18-year-old? The answer to your question is no, it would not matter. We also do think that exhaustion is satisfied. The way that this Court has explained the exhaustion requirement within the statute is that you need to raise the general. We don't transfer the mens rea to the question of age. I mean, all that matters is whether the victim here was or was not under 18 years of age. Our precedents are pretty clear, and I think precedents of other courts are clear, that we do not transfer the mens rea elements over to the third prong of the test, which is the question of whether the petitioner here actually knew that the victim was under 18. It's just the fact that the victim was under 18, not whether the petitioner knew that she was under 18. Don't you agree? I agree, Your Honor, that under this panel's decision, under this Court's decisions, we're not making a mens rea argument. We preserved it in our opening brief, but we understand it's foreclosed by your decision in Cruz. But the argument that we are making is, as a fact, what is the age of the victim? And in particular, what is the least culpable conduct that the statute would criminalize? And our argument is that, as a fact, the conduct could involve a 17-year-old, and that falls outside the definition of a crime of child abuse, as it would have been understood in 1996. So we fully agree we're not making a mens rea argument here. We've preserved it. But it's not what we're pushing here. Instead, it's about what does that term mean, and what could the victim's age be as a matter of the least culpable conduct covered by the statute? But don't we hold here, with respect to whether there's a risk of harming child victims? You have two things that are sort of against you here. First of all, this is a file-sharing program, which distinguishes the case. The Third Circuit found that, even without a file-sharing arrangement, that there was still the possibility of harm to the child victims in this case. And then when you add to that the fact that this was a child, that this was a file-sharing program, how can that help? How can that be anything other than intrinsically harmful to the emotional and psychological and mental health of the child? There are two points, Your Honor, to address the question of the file-sharing program. As we've explained in our briefs, there are many common programs that would qualify under the statute. And even storing on your smartphone, for example, could constitute a violation of the statute. Your Honor refers to the Third Circuit's Salmoran decision. We have several different reasons why it does not dictate the result here. The first and simplest reason is that it considered a different version of the statute, where the victim had to be someone who was 15 years or younger. So not only it involved a different offense than Mr. O'Dean was convicted of, but that it defined a child much more narrowly than the current version of the statute does. And as we explained in our briefs, that's legally dispositive, because states generally understand that 17-year-olds can consent to a sexual relationship in a way that a 15-year-old cannot. That's one reason why the Salmoran decision doesn't control here. It also is not the basis on which the BIA ordered Mr. O'Dean to be removed. It also was decided under the old Chevron deference regime that did a lot of work in the Salmoran decision. We also have reasons why it didn't engage in the type of analysis the categorical approach calls for, because I completely agree, there are many ways that the statute could be violated that would be harmful to children in a way that's easily understood. But the categorical approach requires, and Your Honor, Judge Wilkinson put this very well in the Cruz decision, every version of conduct that would be criminalized by the statute needs to result in harm or risk of harm to a child. So two examples, I've already talked about the two 17-year-olds. Another one is the digital manipulation or morphing of an innocuous photo, which could happen privately. So there's no harm or abuse that occurs at the time the photo is taken when it's digitally manipulated. And importantly, this statute doesn't require that distribution occur. But I don't see, just as a matter of looking at the New Jersey statute, it seems to me so clear that the New Jersey statute, what it's describing here is a crime of child abuse. What else could it be describing? And if the New Jersey statute describes a crime of child abuse under 1227A, that seems to me sufficient. And our precedent says pretty clearly what's necessary for a statute to describe a crime of child abuse. And it says, one, the offender has to knowingly store an item that depicts the sexual exploitation of a child. And that's what the New Jersey statute does, knowingly storing or maintaining an item depicting the sexual exploitation or abuse of a child. And so then you get down to the second element, which is depictions of harm or risk harming a child victim. And that's especially true given the fact that this is a file-sharing program. And then you get to the point of, does the statute cover those under 18? And the definition of the New Jersey statute says, child means any person under 18 years old. So what I don't understand is it seems to me the New Jersey statute describes a crime of child abuse and that it covers all three of these elements. And that seems to me a difficult thing to work around. There are several points in that question I'd like to address, Your Honor. One that you did raise is what else could this be called. I think it's actually an important question because the INA is a carefully reticulated statute that Congress has set up and has amended virtually every single year in the past three decades. And it's kept these definitions the same. There is a basis for removal for an offense related to child pornography. I think even the government agrees that would not apply here. It's also for sexual abuse of a minor. The government tried that argument. It also doesn't apply here. So I think what's happening is the government is trying to shoehorn this statute that's different from the ones this court considered in Cruz and in Shea and trying to shoehorn it into this broader, vaguer definition for a basis of removal. And it's really not the classic, it doesn't require offensive touching or harm like those other statutes that this court has considered. And importantly, I take Your Honor's point that this is probably a good law, it's great that New Jersey has it in place, but that's different from whether the particular conduct that the statute can criminalize and has been the basis for prosecutions necessarily results in harm or risk of harm to a child, which is the closer question that needs to be answered. How do you think we ought to, maybe you say, we've answered it in Cruz already, but how are we to evaluate whether there's a risk of harm? I mean, it seems a little odd for us to be doing as an initial matter, right, as opposed to sort of having some reference to sort of a legislative judgment about the risk of harm. I think I could tell a pretty convincing story that even the hypotheticals that you've put forward include a real risk of harm to a child that is 17 years old. You say that it's no harm at all, but that seems like a, just like a value judgment where you and I diverge. Help me understand how you think we're supposed to be doing that. You think it's like a great thing, you know, for 17-year-olds to be doing the things that you've described. Some of us might think it's actually not at all, but that seems like an odd place for us to be where like your values, or at least as a lawyer, your purported values are like different than what I think is harmful to teens. That's an odd place for us to be. Can you help me understand how you think we ought to be doing that? It's a great question, Judge Richardson, and I fully agree that this should not be a values judgment subjective call about who thinks what is harmful or not. And I would also say you could very much conclude that the activity we described in our briefs is unwise, poor decision-making, should not be done, and even should be criminalized, but it's different from saying in every circumstance results in harm. But I think you get at it's... Well, but it is harmful to the teen, whether they think it's harmful to themselves or not. Right? You know, my daughter might drink a Dr. Pepper, right? That's not good for her. She doesn't think that's harmful to her, but I can make the judgment that it is harmful to her. God forbid it be a Diet Coke, right? But I think objectively it is harmful, right? Whether she recognizes it or such doesn't really answer the question to me. So I want to really get to the nub of your question, because I think it's a good one. I first just want to note that part of the slipperiness here is that because there's not an element in the statute that actually requires proof of harm. Many other child abuse statutes do, and it makes this question very simple. There's a mismatch there that we think is more the government's problem than our own. But I actually think Judge Wilkinson's decision in Rangel-Castaneda provides a bit of a template for how to think about this, the same way we might think that these types of activities are inherently harmful. But we want to avoid the kind of subjective differences between courts. You can look at how states have defined these types of activities, and in particular, it is also probably a bad idea for 16-year-olds to engage in sexual relationships. But the vast majority of jurisdictions have made the conclusion they at least have the capacity to make that decision for themselves, and don't, as a categorical matter, suffer harm resulting from it. And that's the type of analysis Judge Wilkinson did at Rangel-Castaneda we think is helpful here, which is to look at how other states have realized this type of punishment. That's fair, but that's like a different—they're drawing a distinction, you might say, between the act itself and the memorialization of related images, right? So it seems like to me, if I do that move, that seems to cut against you, because lots of states—and not all of them, I get, it's a little bit of a mess—but lots of states make the image piece unlawful, even if the act piece is not. So that seems to suggest that the image memorialization point is, at least lots of states believe, it causes harm in a way, perhaps, that the act doesn't. I see my time is expiring, Mike. I'm sure Judge Wilkinson will let you answer it. Thank you. So I think you're right that the question of the age of consent to engage in a sexual relationship, it's a different question than whether or not you can share nude images of yourself you've taken consensually. I think, if anything, there's a greater-includes-the-lesser instinct there. In particular, because— No, but it seems like that's exactly the opposite of what the states are doing, though, right? Because the states are saying it's okay to engage in the activity, but it's not okay. I mean, this is just looking at states, which is what you've suggested. The states seem to draw the line the other way. Not greater-includes-the-lesser, but in fact, the memorialization of this is more harmful than the act itself. Yeah. And just to bookmark, we think you should look at 1996 as opposed to 2026, when what we're describing was perfectly lawful in New Jersey up through 2013. But I agree with you that this is a type of activity that can have long-lasting consequences the person at the time might not appreciate, that also, I think, is true of engaging in a sexual relationship. That is something that states still permit. I also just want to say, even if you're not buying this argument about 17-year-olds, we have two additional examples, and in particular, I think the government doesn't have a good response to our example about the digital manipulation of a photo, one that is not harmful when it was created, one that is manipulated only in private, and the statute doesn't require this. And this argument is that if you digitally manipulated a teen's photograph and then shared that around, that that's causing no harm to the person whose head is on a modified body. That's the argument you're making. It's not, Your Honor, in particular because the statute is extremely clear that there does not need to be distribution, intent to distribute, or even that the defendant theoretically knows that distribution is possible. It can be entirely private without anyone beyond the person manipulating the photo knowing it exists. That can violate the statute. I first passed this statute in 8 U.S.C. 1227, and then it has all of these little identifiers after that point, and it said we're a crime of child abuse, and it was describing it. Wasn't the New Jersey statute, this kind of statute, exactly the kind of child abuse that Congress was trying to get at. It seems to me when you read the New Jersey statute, it almost seems to me that that's a paradigmatic crime of child abuse. Now you can go into these rather distant hypotheticals about what it might be, what it might be applied to, but I think Duenas-Alvarez indicates we're not supposed to indulge these flights of imagination. We're supposed to look at the heartland of what the statute does in the statute. Maybe my views of it are oversimplistic, but Congress decided it wanted a crime of child abuse to be proscribed in the immigration laws, and what Congress wanted is perfectly set out by the New Jersey statute. The degree of congruence between the federal law and the New Jersey statute, the degree of congruence is absolutely remarkable, and you look at the two and you say, yeah, this is what Congress wanted. This result is what Congress wanted, and you have to be, and I give you high marks for creativity on the way to get around this, but there's a congruity and a common sense element right at the core of the whole matter, and the degree, it seems to me that there's a, they match right up. I mean, I hypothetically and imaginatively, I can think of something here, there, or yonder that might at some point indicate a difference, but that's hard for me to do. Thank you, Your Honor. If I could make just two points in response, I think a number of things to address there. One is, respectfully, the best way to know what Congress is up to in the statute is to look at the words that it used, and Congress could have said, any offense that involves a child, that's removable. It didn't. It set out a number of different grounds of removal, including one that's an offense related to child pornography that we agree doesn't. But you're telling me that taking pictures of children under the 18, years of 18, and lewd and pornographic situations, and then putting them in a file-sharing program which is geared for further distribution, that that's not a crime of child abuse? How can that be? I just don't understand. Your Honor, at least the examples that we've explained in our brief, which I also want to get to your point about the realistic probability of a prosecution here, because I think it's both the court's test is a little bit different than having to identify an exact case, but we've also identified prosecutions that happen under this statute. But the point is that the offense committed here, not the production of the images, not the manufacturing of the images or the distribution, all of which are different offenses than the one addition here, that this statute in particular can be violated without harm resulting as a categorical matter or risk of harm resulting. I want to quickly address the question of the realistic probability that you raised, because I think it's a good one, that courts shouldn't be engaged in fanciful hypotheticals. This statute, I'm sorry. You want to wrap up very, very quickly. I can wrap up. Just to say, in our brief we explained, there are prosecutions like this. New Jersey Supreme Court and the legislature have addressed it. Save the remainder for rebuttal. Thank you. Thank you. Mr. Ziding? Good morning, your honors, and may it please the court. Imran Zadi for the government. This appeal challenges the agency's determinations on both removability and relief. I plan to focus my argument today on removability and rest on the briefing as to relief, subject, of course, to the panel's questions. On removability, the agency here correctly found that petitioner's conviction in New Jersey for knowingly storing child pornography on a file sharing program made available to others. Is a crime of child abuse for immigration purposes. You start with the court's definition of child abuse, which we've kind of talked about in petitioner's argument, but I think it starts to just help very concretely. There's three elements that the courts have defined them. First is a couple mental state. Second is an actor omission that causes harm or a reasonable probability of harm to, third, a child. There's really not much dispute here as to the first and the third elements. First, couple mental state, the statute requires knowingly storing an image. I don't understand petitioner to even dispute that anymore. Third, as to the definition of child, petitioner had raised an argument based on Escobar-Quintana. We understood their reply brief to concede at least the direct application of that. I didn't understand in their opening brief there to have been two separate arguments. After this court's decision in Shea, this argument about the definition of a child being under 16 is no longer available. Well, I wouldn't say that. Pardon me, Your Honor? I wouldn't say that. I said this court has rejected the proposition that the holding of Escobar-Quintana applies in this situation. I don't think they've conceded that. I mean, they make to me what sounds like a first principles at the time this statute was enacted. This statute was enacted. Yes. Child meant 16 or younger. Yes, Your Honor, but what the court was considering in Shea was whether or not a challenge to that specific, I think it was an inducement of a minor statute, whether that would be overbroad because the conduct did not involve a child that was 18 or under, compared to a definition. So if we want to talk about things that weren't addressed in the brief, something conspicuously not mentioned in your brief is former 18 U.S.C. 2243a, which as of the time this statute was enacted, applied only to people under the age of 16, correct? That's right, Your Honor. And why did you not say anything about that in your brief? Your Honor, again, because of this court's decision in Shea, we don't believe the argument that this statute could cover the crime of child abuse at ground could relate to somebody under 18. Well, let's assume that I don't believe that our decisions squarely foreclose the argument they're making. So what is your substantive response to that statute? Your Honor, the substantive response here is, starting with the board's decision in Velazquez-Herrera, which this court has tracked in every one of its child abuse decisions, that the definition of child is under 18 based on the full assortment of state statutes and other, not that statute, not that federal statute. You don't have a federal statute that defines what a child is for federal criminal law purposes. A minor, Your Honor. A minor, fine. If I'm remembering that statute from Esquivel, can you tell me correctly? I think you're right. And it's not just minor. I believe it was a very similar statute to the sexual abuse of a minor immigration ground. I believe it was a sexual abuse of a minor or ward, something along those lines. I believe it's a ward statute, yes. Right? So it's an incredibly similar statute to the one that was being considered in Esquivel-Quintana. And that's why the court in Esquivel-Quintana has at all points limited its holding to specifically the context. Oh, no, I agree. Every single time the court states its holding in Esquivel-Quintana, it says, we're only talking about this statute.  But you sort of read it broader, saying, not only are we only talking about that statute, which is what I read. The court just making very clear what the precise nature of its holding is. But you read a very large negative implication into that holding, which is, and the answer is thus not the same in any other situation, which I think is an over-read of that decision. Well, Your Honor, it's not our read of it. It's our read of Shea, which is that the argument there was that, based on Esquivel-Quintana, you must also define child abuse to be under 60. Right. And I agree. This Court has held that Esquivel-Quintana does not require us to do that. I agree completely. Right. But we read Shea at the end to say that it is not a match there. We read Shea to say that the crime of child abuse is defined, and this is what we've said in our brief here, to be under 18. And so I recognize that even at its most, if Shea was just rejecting a direct application of Esquivel-Quintana and that there's some other reasoning left over, we don't think that there's anything left over. Oh, their opening brief has a whole series of arguments. I guess I just keep hearing you say that we've already decided this, and you're not going to concede anything by answering my question. Sure. Assuming for the sake of argument that we have not already decided this question, what is your actual response to their argument that all the authorities they cite suggest that at the time, in 1996, it was 16 or younger? Your Honor, it would again be, and because we didn't brief this because we don't think that it is available after Shea, the arguments would be based on exactly what the board in matter of Velazquez-Herrera relied on, which was a series of statutes, many of them, I believe, civil. A board decision that we don't give any Chevron deference whatsoever to at this point? Without question, Your Honor, but this isn't a matter of Chevron deference. What this court has already done, even before Loeber-Bright was decided, this court had commonly followed the board's definition, but without doing it under deference. So in the Cruz decision, for instance, the court recited the entire, I believe, matter of Velazquez-Herrera decision, and then said, we have a very similar definition here. And so the board's reasoning in matter of Velazquez-Herrera, which did examine contemporaneous 1996, both definitions, statutory context, all of the things you would do in a traditional tools of construction analysis, reached that. And I hope that answers your question as to what the affirmative argument would be if Escobar-Quintana was not foreclosed. Thank you. This New Jersey statute describes child abuse. It could not be talking about anything else. It is not talking about doing the child a favor. You don't do a child a favor when you photograph them in a very compromising position, and the child is by definition under 18 years old, and you put them in a file sharing situation. That is child abuse. Your Honor, you're not going to get any disagreement from me there. I think what I would like to do with that suggestion is put it concretely to an analysis of the elements of the statute of conviction to the definition of crime of child abuse. So we've already taken culpable mental state off the table and the definition of child. Right now, the way we understand petitioner's argument, the sort of meat of their challenge, to be about harm. Whether or not this statute, the sort of outer stretches of this statute. I worry about, you know, they had a certain practicality in those folks that are good enough to represent us in Congress. And, you know, I don't want to leave them scratching their heads. And if you have an appellate court that says somehow that this New Jersey statute really doesn't mean what it says and that it's dealing with something other than child abuse, the good folks on Capitol Hill are going to be saying, what? They're going to be scratching their heads. Judge Wilkinson, I agree with you fully. And I want to be clear that in addition to what you're saying, which is just as a matter of common sense and practicality, we're right. I want this panel to understand that as a matter of elements to elements, we're right. I was going to say, because the categorical approach has repeatedly said we don't do practicality in part way. I want to be very clear, Your Honor, because we grounded, of course, our analysis in the categorical approach and the elements. So on the second element of the court's definition, which is an act or omission that causes harm or a reasonable probability of harm to a child. Petitioner's argument is that this statute sort of pulls in conduct that falls outside of that definition. Can I just give you a hypo that illustrates to me why this seems so strange to me?  So we all agree that the age of consent to sexual intercourse in New Jersey is what? Under 18. Okay, so imagine two high school seniors. One is 17 years and 365, four days old. One is 18 years and one day old. The two of them have sex, which is perfectly legal in New Jersey. It is perfectly legal in federal law. It is perfectly legal in New Jersey. And as a matter of sort of some Gen Z desire to document every single moment of their entire lives, they snap a picture and one of them has a cell phone that connects to Google Photos or Google Drive, which I suspect lots of people's cell phones connect to Google Photos or Google Drive. It just feels weird to me to say that the sexist. And this is not like this is just literally two teenagers who had sex taking a picture of both of themselves. Sure. And uploading it to Google Photos. And so the sex is perfectly legal, but the fact that they snapped a picture on a phone that's connected to Google Drive is now a crime. So, Your Honor, I appreciate that you've done the work of using a file sharing program and not just saying an Apple phone, and that might be a computer and there's nothing else. No, Google Photos. No, no, he's not doing that. He's actually doing the opposite of what you're suggesting he's doing. He's saying it's Google Drive. So it's not a file sharing program. It's your own Google Drive, which is accessible from both your phone and your computer. But it's not a file sharing program he's giving you. He's giving you iCloud as the same, would be the same example. I'm sorry, who's the he? Me. Judge Hytens. Because Petitioner mentioned cloud and I don't, I can't remember if there was a cloud. This is a cloud question. His question is both two consensual teens. That's one part of it that he's hypothetical. And the second part is that it's a cloud. Sure. It's not a sharing program. It's your own cloud, but is accessible from maybe more than one computer.  And so the question, the starting point is how does that match up with the definitions and the elements of this particular fence? As a matter of Google Drive, I can make my Google Drive available to other people, right? I believe so. Yes. And Google Photos. I believe that's what a Google Drive does. Right. Right. That's what you can do. So that's a file sharing program under the statute. Yes. I believe so. I believe so as a general proposition. I do not know that that is true for the purposes of this statute. I'm just looking at the definition of file sharing program under this statute. Just looking at the definition, which seems to be very... It is a computer program or application or software, which Drive and Photos both are, that allows the user of a computer, which my iPhone is, on which such program application or software is installed, which it is, as available for searching or copying by one or more other computers, such as my laptop, my iPad, my spouse's laptop, my spouse's iPad, any number of other people's, all of which are computers. Right? Why is that a file sharing program? And then to make them, through this definition, through the statute... That's why people put things on Google Photos and Google... To designate those files as searchable. Right. To designate, not even that I have to do it. It's that I can designate. I will represent to you that I can designate my Google Photos to be shareable by anyone I want. Right. And so the question is, under the different definitions you need to satisfy under the statute, is one, it needs to be an image that is depicting the exploitation or abuse of a child. And then second, to satisfy that file sharing program definition, which is to be placed on a program that shares files with others and to be made available for searching and copying. Now, you understand those two elements also in the context of what New Jersey Supreme Court has said about this statute. About a different version of this statute, you mean? A different version with different classifications and has said that this exact classification that's at issue in this case, which is the file sharing version of it, is tantamount to, on the same level, second degree, as the distribution offense. So Sisler, yes, was ten years before this subsection was added. And what Sisler said is the statute has meticulously denominated the offense levels and severities of conduct. And then ten years later, when the legislature added this statute, it said this will also be classified as a second degree offense like distribution, which means it is sentencible for five to ten years. Petitioner Hare was sentenced to six years in prison because of the severity of that offense and that possession is less than, but we still think would be, crime of child abuse. But it's less than storing it on a file sharing program or the distribution of those materials. If the court has any pause about any of what I just said, we are talking about hypotheticals. We are actually literally talking about hypotheticals. So what do you do with hypotheticals or more attenuated theoretical assertions of what a statute might reach? You need under Duenas-Alvarez to satisfy that with a rewritten statute. Well, can you answer my hypothetical about whether you think that violates this statute? And if not, why it doesn't? I don't believe that it falls under the statute, Your Honor, for the two reasons I just said, which is the images that must be covered under the statute must themselves be exploitative or abusive to a child. And I don't think that that is a file sharing program. That's certainly not how New Jersey has understood a file sharing program to just be placed on a Google Drive. We would say that that is at a minimum something theoretical enough that you would need to show a case example and satisfy it under the realistic probability test. And I would understand your example, by the way. This is a bit semantics, but it matters here. You're talking about the 18 and the 17-year-old, right? Sure. I was deliberately trying to avoid your argument that the 17-year-olds are not exhausted. Yes. So to that, that would be the argument there. And again, understanding those elements the way that New Jersey and Sisler, which does apply here in terms of how it's decided the statute, how it is understood the statute and the offense levels. So the other examples that Petitioner has raised here – oh, I'm sorry. Your Honor, this is some of the realistic probability tests. Petitioner never really – I think they started to in the end of the argument get to that. We still don't understand any of Petitioner's arguments about realistic probability to have even tried to raise an example of a crime that reaches this conduct, one, just on the substance of it. And that is done so that it led to a conviction, which is what the realistic probability requires as interpreted by this court in battle. And that's for good reason. You do that because you want to make sure that you know a state's statute is not just even charged, but it results in a conviction that the state has actually applied a statute in the manner – in the non-generic manner in which the Petitioner has asserted. The other – so I think I've addressed the sort of sexting examples between teenagers. I think that's the primary basis for Petitioner's challenge. There's a few other ones based on this post – after the fact manipulation. Can I ask you about your – can I ask you about their third argument? I'll just say as a matter of intuitive sense, you're sort of – he couldn't have been charged under that version of the statute because that version of the statute couldn't have applied to him because it would have violated the ex post facto clause to apply that version of the statute. But I look at our cases and they say over and over and over again it is the offense as of the time of conviction, not the offense as of the time of conviction led in light of the restrictions of the ex post facto. You know what I'm saying? None of our cases have this carve out. That's a pretty novel argument. There's no question. And I think – so to be clear, you're talking about the pulling in the unconstitutional conduct argument. Correct. And you say it's no big deal because that version of the statute, even though it had been enacted at the time of his conviction, couldn't have applied to him consistent with the ex post facto clause. That's right. And that might be right or wrong. I guess I'd have to figure out what to do with all of the times this court has said the offense at the time of conviction. No, it's an interesting and very important question, Your Honor, because you're 100 percent right. There is not much case law out there on this. And that's for the very simple reason – There's not much or there's none? There's Marrero, which is – which at least actually goes to the exact analysis you would need to follow. But the reason that there isn't much analysis or holdings on this from any court, not just this one, is because very commonly – and I honestly will put a number as high as somewhere in the 90 percent range – you have a date of commission and a conviction – a date of conviction addressed under the same statutory ground. Nothing's changed between those two times. That's just the practical reality. Sometimes it will be the case that the statute is materially changed between the time that somebody committed a crime and that somebody was convicted of that crime. And in that, it's just black-letter law that you are convicted – you cannot be convicted for something that was not criminal at the time that you committed the offense. That's ex post facto law both under New Jersey and under federal law. And because of the categorical approach, it's not as frustrating and as constraining as it is. It is asking a simple question, which is what do we necessarily know you were convicted of? And because of the ex post facto clause, we know you were necessarily convicted only of conduct that was criminal at the time that you committed it. How do I know that? This categorical approach, I'm not sure it requires an absolutely perfect match. And the Supreme Court has – when the categorical approach first came in, the whole concept of least culpable conduct was applied by imagining this and that, and to which the statute could be applied. And then I think the Supreme Court found that that was resulting in some rather odd situations and atypical situations. And it backed away from the idea of a perfect match. And then you get what was a seminal decision in Duenas-Alvarez, which said we are not to imagine things like sexting between teenagers or consent, none of which, of course, is involved here at all. They said, oh, you can't look at the facts. And you don't need to examine all of the facts. But the point is that the Supreme Court has begun to loosen a little bit the strictures of the categorical approach and to demand something, to require something less than a perfect match and to look at the gravamen of the New Jersey statute and the center of gravity of the New Jersey Supreme Court decisions and what Congress was trying to get into and that a certain spirit of practicality and common sense could be applied to the problem. And that's sort of where we are. Your Honor, I think the one thing I would clarify there is I do think the Supreme Court has made clear that you cannot make arguments based on sort of hypothetical conduct, but they're still doing it within the confines of matching the elements of a statute of conviction to the elements of a federal or generic offense. So I certainly agree that there are times when somebody asserts that a statute is overbroad in a way that's maybe technically possible, but that is imaginative and hypothetical. And for those, the Supreme Court, you are absolutely correct, has clarified you need to substantiate those with actual case examples and you need to show a conviction, especially as this court has confirmed. The one other example that we didn't get to is petitioners hypothetical. I just want to touch on this really quickly, the example of sort of the morphed or manipulated image. So take a picture of a child from his 14th birthday party and then you, through the computer, take off their clothes or depict them in some sexualized position and share it with other people. Honestly, Your Honors, I struggle to understand why this action isn't even worse than what's at issue in the subsection here because then you yourself are the one who is sexualizing and abusing the child through your action of morphing their image and then sharing it with other people. But I think the point is once you have satisfied the two actual main elements of the statute, which are you have depicted a child in a sexually exploitative or abusive way and then placed it on a file sharing program that is searchable or copyable to others, you have committed a crime of child abuse. And I really don't think there's any question about that. There are no further questions, Your Honor? Yes, he denied the petition. Thank you. All right, Mr. Erpenbach. We'll be glad to hear from you in rebuttal, sir. Thank you, Your Honor. A few quick points of rebuttal. I'd like to focus on some of the arguments I didn't get to address as fully in my opening statement. I want to start with our second argument, about the definition of a child does not include a 17-year-old as defined in 1996. This is at bottom a standard statutory interpretation case, which used the standard tools of statutory interpretation. Looked at the meaning in authoritative dictionaries like Black's Law Dictionary, any others that this court has used in the past, and look at a survey of the states. Both of those basic indications, which this court has previously used to define a crime of child abuse, point in the same direction, just that Congress would not have understood 17-year-olds to be included in a crime of child abuse in 1996. Judge Hyten's act asked about 18 U.S.C. 2243, understood the government's argument to be that it doesn't apply effectively because it uses the word minor instead of child. We're happy with that distinction, because as Black's Law Dictionary substantiates, child is a narrower term than minor, and it's also reflected in the state laws. As in minor as someone who just lacks legal capacity? That's our understanding. Or too young to have legal capacity. Yes, that's our understanding. And then the common law understanding that the established meaning in 1996 was younger than that. And the government also raised the BIA's decision in Velazquez-Herrera in 2008. Even if we had show-front deference, it's not exactly an opinion that deserves deference from this court. That court had two reasonings for why 17-year-olds can count as a crime of child abuse. The first is that, well, we said it already for sexual abuse of a minor, ergo it must be the same result. And then a footnote in which it said that 48 states and D.C. all define it that way. I think we've proven pretty definitively in our briefing that that is not the case based upon a survey of crimes of child abuse in 1996. And I would also point this court to the Tenth Circuit's decision in Ibarra v. Holder that we cite for why it's important to look at criminal statutes, not just any civil statute. One notable demonstration of this is Missouri's laws, which the BIA points to as a good exemplar for their definition. In 1996, Missouri very clearly defined a child to not include someone who is 17 years old, and it even made the distinction between minors, which is anyone under 18, and then a child, which I believe was 16 and under. And there was a criminal statute in place that made that clear. We survey a number of others in our briefing. Also very clear examples are this very statute at issue here, which is New Jersey's primary child endangerment statute and the A provision that's not at issue. That was not defined to include a 17-year-old. New York statute is the same. Iowa's I could keep going. The government doesn't have any substantive response to that. Again, put Esquivel-Quintana to the side. Approach this as a basic statutory interpretation question. You might think Congress today would reach a different conclusion. It's ultimately for Congress to make that decision. They've amended the statute many times. They've never seen fit to provide any definition or to change this. And so this court should apply this as a statutory interpretation case. The next point I'd like to address is the scope of this statute, which received a lot of back-and-forth, the government's argument. The question about whether Google Drive or Dropbox or any number of other programs you're familiar with, Apple iCloud or Covered, is answered by a New Jersey appellate division case that we cite in our brief on page 4, which involved a conviction for storing the images on Google Drive or Dropbox. I understand the concern about engaging in hypotheticals or dreaming up scenarios. This is activity that teenagers, unfortunately, do engage in on a regular basis, and we've identified prosecutions that do closely map to the examples we raise in our briefs. And if you have further hesitation there, importantly, it's not about whether a particular prosecutor will choose to convict for a particular crime. It's about what the statute says. In the government's back-and-forth, they don't raise a reason why the statute is ambiguous about the conduct that it covers. And this court's decision in Gordon v. Barr makes clear that the statute is clear that answers the question. We also have a decision from the New Jersey Supreme Court that answers the same question, language from the New Jersey legislature. I also want to quickly touch on our argument about the First Amendment. I think Judge Heitens raises a good point that it would require changing this court's approach to the categorical approach and throwing out any number of standards that this court, other circuits, even the Supreme Court has laid out. Could you respond to the... Oh, sorry. No, go ahead. We were going to say the same thing. Go ahead. Could you respond to the government's argument that fine, but yes, those cases have never addressed this question, and if the whole point of the categorical approach is to ask, quote, what crime the defendant was convicted for, obviously the defendant wasn't convicted of a crime that would violate the Constitution to have convicted him of that crime. So I don't understand the government to be saying that the ex post facto protection would be violated here, but that it could be in a future circumstance. Say if instead of this statute getting broader and broader, it got narrower such that there's no longer a categorical match. Our understanding is that that's never arisen in a case except for Marrero, and Marrero, which was an unpublished decision, actually raises the concern with applying that kind of test, which is that there would be inequities between defendants. So in Marrero, the Shepard documents did not say when the conduct occurred. In New Jersey, we have documents that do say when the conduct occurred. So identical conduct—I'm sorry, my time has expired. You can answer this one. Identical conduct on different sides of the Hudson then received very different consequences under the immigration system, which is exactly the kind of unfair inequity that the Supreme Court has said the categorical approach is designed to avoid. I also want to just quickly touch on our discretionary cancellation of removal argument. Just to say we're maintaining it. I would point this Court to the decision of Cortes v. Garland, which is binding. If anything, I think the legal errors here are simpler, more straightforward. Thank you. Thank you very much. Hold on a minute. Do you have anything further? No, I'm good. Thank you. I see that you're court-appointed, Mr. Erpenbach, and I really want to thank you on behalf of the Court. You've obviously put a good deal of time into the preparation and presentation of your case, and we really are most appreciative. Thank you, Your Honor. We will adjourn court and come down and greet counsel. His Honorable Court stands adjourned until this afternoon. God save the United States and His Honorable Court.
judges: J. Harvie Wilkinson III, Julius N. Richardson, Toby J. Heytens